UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LISA D. KULLMAN,

           Plaintiff,

v.                                                    Case No.  8:17-cv-382-T-30AEP

NANCY A. BERRYHILL,
Deputy Commissioner of Operations
performing the duties and functions
not reserved to the Commissioner of
Social Security,

           Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review of the denial of her claim for disability insurance benefits ("DIB").  As the Administrative Law Judge's ("ALJ") decision was not based on substantial evidence and failed to employ proper legal standards, it is recommended that the Commissioner's decision be reversed and remand for an award of benefits.

## I.

### A.      Procedural Background

On July 9, 2003, Plaintiff filed an application for DIB, alleging disability as of September 2, 2000 (Tr. 932–34).   This is Plaintiff's fifth attempt to challenge the Commissioner's decision to deny Plaintiff's application for DIB.[1] On February 11, 2014, a district court entered an Order ("2014 Order") adopting a Report and Recommendation ("2014

---

[1] Different ALJs denied Plaintiff's claim for DIB on April 28, 2006, January 10, 2008, August 14, 2009, June 14, 2012, and April 28, 2015 (Tr. 1271–91, 19–32; 41–52, 816–29, 1271–91).  The Appeals Counsel vacated or remanded the ALJs' decisions on three occasions (Tr. 33–7, 65–6, 88–93, 832–33, 855–58, 894–96, 950–59), and the Court remanded the case for further consideration in one occasion (Tr. 1309–25).

R&R"), recommending that the Court reverse and remand the Commissioner's fourth unfavorable decision for further proceedings (Tr. 1309–25).  Pursuant to the 2014 Order, the ALJ held a hearing on January 13, 2015 (Tr. 1326–77).  Following the hearing, the ALJ issued another unfavorable decision finding Plaintiff not disabled, and accordingly, denied Plaintiff's claim for benefits (Tr. 1271–91).  Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1262–67, 1293–1308).  Plaintiff then timely filed a complaint with this Court (Doc. 1).  The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B.      Factual Background and the ALJ's Decision

Plaintiff, who was born in 1961, claimed disability beginning September 2, 2000 (Tr. 1271).  Plaintiff obtained a college education (Tr. 1290, 1433).  Plaintiff's past relevant work experience included work as an assistant manager, a customer service representative, an assistant director in an elder agency, and as a massage therapist (Tr. 1333–34, 1368).  Plaintiff alleged disability due to rheumatoid arthritis, fibromyalgia, degenerative disc disease, chronic fatigue, hypertension, depression, asthma, rhinitis, sinusitis, polyarthralgia, obesity, and sleep apnea (Tr. 976).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2004 and had not engaged in substantial gainful activity since September 2, 2000, the alleged onset date (Tr. 1276).  After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: degenerative disc disease of the lumbar and cervical spine; obesity; rheumatoid arthritis; and fibromyalgia (Tr. 1276).  Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

Appendix 1 (Tr. 1279).  The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(a), except she required a sit and stand option (Tr. 1279).  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 1281).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform her past relevant work (Tr. 1289).  Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a will sorter, an order clerk, and a telephone solicitor (Tr. 1291). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 1291).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a), 416.920(a).  Under this process, the ALJ must determine, in sequence, the following:  whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience.  20 C.F.R. §§ 404.1520(a), 416.920(a).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

The ALJ, in part, decides Plaintiff's claim pursuant to Regulations designed to incorporate vocational factors into the consideration of disability claims.  *See* 20 C.F.R. §§ 404.1501, *et seq.*  These Regulations apply in cases where an individual's medical condition is severe enough to prevent him from returning to his former employment but may not be severe enough to prevent him from engaging in other substantial gainful activity.  In such cases, the Regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in determining whether the claimant is disabled.  These factors are codified in tables of rules that are appended to the Regulations and are commonly referred to as "the grids."  20 C.F.R. Part 404, Subpart P, App. 2.  If an individual's situation coincides

4

with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled.  20 C.F.R. §§ 404.1569, 416.969.  If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability but is advisory only. 20 C.F.R. §§ 404.1569a, 416.969a.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.  *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

**III.**

Plaintiff argues here that the ALJ erred by (1) failing to properly evaluate Dr. Eugenia Rullan's ("Dr. Rullan") opinion in light of the applicable law of the case; (2) failing to properly evaluate Plaintiff's credibility regarding her pain and limitations, and (3) failing to conduct the proper analysis to determine whether Plaintiff was capable of performing semi-skill work. Additionally, Plaintiff argues that the proper remedy here is reversal, not remand.  For the reasons that follow, the ALJ failed to apply the correct legal standards and the ALJ's decision is not supported by substantial evidence.

### A.  Dr. Rullan's Opinion

Plaintiff's argument regarding the application of the law-of-the-case doctrine arises out of the ALJ's decision to provide little weight to Dr. Rullan's opinion (Tr. 1287).  On remand, the Appeals Council directed the ALJ, among other things, to properly address Dr. Rullan's diagnosis of fibromyalgia.  The ALJ was also directed to properly weigh Dr. Rullan's opinion "by properly evaluating [Plaintiff's] activities of daily living" (Tr. 1274).  In reaching the disability determination, the ALJ gave Dr. Rullan's opinion little weight (Tr. 1287).  In her Medical Source Statement, Dr. Rullan opined that Plaintiff could sit continuously for thirty minutes and would then need to walk for about fifteen minutes (Tr. 621). Plaintiff could sit a total of two hours in an eight-hour day.  (*Id.*).  Dr. Rullan also opined that Plaintiff could stand and walk for about fifteen minutes and would then need to lie down for two hours and could stand or walk for about a total of one hour in an eight-hour day (Tr. 622).  Further, Dr. Rullan opined that Plaintiff would need to rest, lying down or reclining, five hours a day, and take customary work breaks to relieve her pain and fatigue (Tr. 623).  Dr. Rullan also stated that the claimant could occasionally lift and carry up to five pounds, and rarely or never more than five pounds, and that Plaintiff could frequently balance and never stoop (*Id.*).  Finally, Dr. Rullan

diagnosed Plaintiff with rheumatoid arthritis and fibromyalgia syndrome, and noted that Plaintiff's condition "existed and persisted with the restrictions as outlined in [her] Medical Source Statement at least since December 2002" (Tr. 624). Plaintiff contends that the ALJ erred in his assessment of Dr. Rullan's opinion because (1) the "law of the case" precluded the ALJ from rejecting Dr. Rullan's opinion and findings using the same or similar rationale previously rejected by the Court, and (2) that the supplemental rationale provided by the ALJ to reject Dr. Rullan's opinion was flawed (Doc. 28 at 19–21).

   1.   **The Law-of-the-Case Doctrine**:

   The law-of-the-case doctrine dictates that the resolution of an issue decided at one stage of the case remains binding at later stages of the same case to preclude courts from revisiting issues decided explicitly or by necessary implication in a prior proceeding. *See Schiavo ex rel. Schindler v. Schiavo,* 403 F.3d 1289, 1291 (11th Cir. 2005) (per curiam). The law-of-the-case doctrine is limited insofar as it applies only to issues decided explicitly, as well as by necessary implication, in a former proceeding but not to questions that may have been decided but were not. *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1550 n.3 (11th Cir. 1990) (citation omitted). In Social Security cases a ruling that evidence was insufficient to support some finding is the type of ruling that establishes the law of the case. *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998) (citations omitted). New evidence can furnish compelling grounds for departure from a previous ruling. *Curran v. Ho Sung Kwon*, 153 F.3d 481, 486–87 (7th Cir. 1998); *Society of Roman Catholic Church of Diocese of Lafayette, Inc. v. Interstate Fire & Casualty Co.*, 126 F.3d 727, 735–36 (5th Cir. 1997); *Wilson v. Meeks*, 98 F.3d 1247, 1250 (10th Cir. 1996). But if there is no new evidence, or the evidence does not undermine the previous ruling on sufficiency, then that previous ruling must stand. *United States v. Rivera–Martinez*, 931 F.2d

148, 153 (1st Cir. 1991); *In re Japanese Electronic Products Antitrust Litigation*, 807 F.2d 44, 48 (3d Cir. 1986).

In the 2014 R&R, adopted with certain limitations by the District Court, the Court found that the ALJ's reasons to give little weight to Dr. Rullan's opinion were unconvincing (Tr. 1319).[2]   On the contrary, the Court found that Dr. Rullan's findings regarding Plaintiff's limitations were supported not only by Plaintiff's complaints of disabling pain and fatigue related to her fibromyalgia and rheumatoid arthritis, but also by the opinion of other Plaintiff's treating and examining physicians including Dr. Richard Brown ("Dr. Brown"), Dr. Jeffrey Farmer ("Dr. Farmer"), and Dr. Barbara Wagner ("Dr. Wagner") (Tr. 1321).  Additionally, the Court found that Dr. Rullan's own medical notes provided objective evidence to support Plaintiff's allegations of pain (Tr. 1318, 1320).  Furthermore, the Court clearly noted that "[i]t is not uncommon for patients with fibromyalgia and rheumatoid arthritis to have pain that waxes and wanes" and that "symptoms can change daily." (Tr. 1320-21).  In other words, the Court recognized that the existence of some positive results during Plaintiff's office visits were expected.  Finally, the Court found that the activities of daily living cited by the ALJ including "undergoing a full[-]term pregnancy, taking a quilting class, and helping her children with their school work" did not support a rejection of Dr. Rullan's opinion (Tr. 1323).   Essentially, the Court found that no good cause was provided by the ALJ to discredit Dr. Rullan's opinion. While the Court did not state that Dr. Rullan's opinion was entitled to great weight, "the necessary implication" arising out the Court's findings, is that unless the ALJ articulated different reasons from those already evaluated by the Court, Dr. Rullan's opinion is entitled to substantial weight.

---

[2] In reaching his determinations, the ALJ found that Dr. Rullan relied heavily on Plaintiff's subjective complains, rather than objective evidence, and that Plaintiff's treatment was not consistent with Dr. Rullan's opinion.

Against this backdrop, Plaintiff contends that the ALJ failed to comply with the "law of the case" by rejecting Dr. Rullan's opinion based upon very similar grounds to those already addressed by the Court.  After careful review of Dr. Rullan's opinion, the ALJ, once again, gave Dr. Rullan's opinion little weight for the following reasons:

> Dr. Rullan indicated that [Plaintiff's limitations] have existed since December 2002, which is more than two years after the claimant's alleged onset date. Additionally, Dr. Rullan's opinion is not supported by a detailed explanation, as she merely circled her responses on a pre-printed form. Moreover, Dr. Rullan's opinion is not supported by her own history of treatment and findings, as detailed above. Specifically, although Dr. Rullan references swelling, crepitus, and synovitis, she often describes these symptoms as mild in nature, or in trace amounts. This is inconsistent with the extreme limitations ascribed by Dr. Rullan. Moreover, the claimant reported that her prescribed pain medication provided six-to- eight hours of relief. The undersigned has considered the opinion of Dr. Rullan regarding limitations of sitting and standing and has accounted for these limitations in the residual functional capacity by including the ability to sit and stand at will. However, the undersigned does not find the need to rest five hours of an eight-hour day, as it is not supported by the medical evidence of record as described above.  For example, the claimant reported to an examining physician in October 2000 that she was going to massage therapy school. Additionally, the claimant reported to a consultative examiner that she takes care of her 20-month old son, albeit with assistance. She was able to drive to the evaluation and brought her son with her. She also missed numerous appointments secondary to taking care of her children and a busy holiday schedule. Moreover, the claimant's self-reported activities included preparing simple meals, food shopping (albeit "minor"), vacuuming, laundry, and self-care that included occasional use of a curling iron and hairdryer. She also reported that she went to museums, albeit rarely, and entertained guests during family holidays.

(Tr. 1287–1288) (internal citations omitted).  Essentially, the ALJ rejected Dr. Rullan's opinion on three bases: the period covered by Dr. Rullan's opinion; the form in which the opinion was given; and the ALJ's consideration that the medical records and Plaintiff's activities of daily living.

With respect to the time and form of Dr. Rullan's opinion, the undersigned finds that these are not good reasons to reject the opinion of a treating physician.  First, Dr. Rullan indicated that Plaintiff's limitations have existed "*at least* since December 2002" (Tr. 624);

therefore, the ALJ, as conceded by the Commissioner, misstated Dr. Rullan's opinion and this is an error.  Second, while Dr. Rullan's opinion is not supported by a detailed explanation, as she merely circled her responses on a pre-printed form, Dr. Rullan's opinion was not issued in a vacuum.  Instead, it was issued as part of an ongoing medical relationship between Dr. Rullan and Plaintiff, which started in the year 2002 and continued at least through the year 2004.  This medical relationship was extensively documented in Dr. Rullan's medical notes and those notes were available to the ALJ for consideration.  While as argued by the Commissioner, courts generally recognize the limited probative value of checklist questionnaires "because they are conclusory and provide little narrative or insight into the reasons behind the conclusions," *Hammersley v. Astrue*, No. 508-CV-245-OC-10GRJ, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009), the Court in its 2014 Order, considered the merits of the opinion and found it to be supported by the medical opinions of records.  Therefore, this argument lacks merit.

With respect to the ALJ's decision to give little weight to Dr. Rullan's opinion because Dr. Rullan's own treatment notes did not support his findings, Plaintiff argues that the reasons provided by the ALJ were similar to those already addressed by the 2014 Order.  In rejecting Dr. Rullan's opinion, the ALJ found that "although Dr. Rullan references swelling, crepitus, and synovitis, she often describes these symptoms as mild in nature, or in trace amounts" and that "this is inconsistent with the extreme limitations ascribed by Dr. Rullan." (Tr. 1287).[3]  The undersigned finds that the ALJ's reasoning contradicts the 2014 Order and is not based on new evidence that could undermine such ruling.  Specifically, in the 2014 R&R, the Court found that Dr. Rullan's notes reported that "Plaintiff showed signs of synovitis in her [metacarpophalangeal joints, interphalangeal joints], wrists, arms and elbow" (Tr. 1320), and

_____

[3]  Plaintiff cites other reasons provided by the ALJ to discredit Dr. Rullan's opinion, however, those reasons will be more properly addressed as part of the Plaintiff's credibility analysis.

that "the difficulty with Plaintiff's condition was either moderate or complex and her global assessment was either at most stable or was deteriorating" (*Id.*). Therefore, Plaintiff's condition was not, as stated by the ALJ, mild in nature. The Court also found that Dr. Rullan's opinion was supported by different medical opinions, in which findings of painful swelling and synovitis were stated (Tr. 325, 349, 335–36). Further, even if the undersigned were to accept that Plaintiff's symptoms of swelling, crepitus, and synovitis, were mild in nature, Dr. Rullan's opinion, as amply discussed in the 2014 R&R, was based in part on Plaintiff's claim of fibromyalgia, which may or may not be based on objective findings (*See* Tr. 1320–21, stating "[i]t is not uncommon for patients with fibromyalgia and rheumatoid arthritis to have pain that waxes and wanes" and that "[a]t times people suffering from these conditions can often look healthy symptoms can change daily."). Therefore, a finding that Plaintiff's swelling and synovitis were mild would not necessarily contradict Dr. Rullans's opinion regarding Plaintiff's pain limitations.

The ALJ also concluded that Dr. Rullan's opinion was not supported by Plaintiff's activities of daily living, including taking care of her son, being able to drive, preparing simple meals, performing some household chores, and other some rare activities (Tr. 1287-88). Plaintiff argues that these activities are similar to those the Court found as not good reasons to reject Dr. Rullan's opinion. Previously, the Court found that Plaintiff's limited daily activities, including her pregnancy, quilting class, and helping her children with schoolwork did not support the rejection of Dr. Rullan's opinion (Tr. 1323). Here, the undersigned finds that the activities of daily living cited by the ALJ,[4] are indeed, similar in nature to those already evaluated by the Court. Specifically, these activities are minimal daily activities of short

---

[4] The Commissioner argues that in his last decision, the ALJ discussed different activities to those previously rejected by the Court (Doc. 28 at 30).

duration that cannot constitute a good reason to reject Dr. Rullan's finding.   *See Lewis v. Callaghan,* 125 F.3d 1436, 1441 (11th Cir. 1997) (participation in activities of short duration, such as housework does not disqualify a claimant from disability); *Kahle v. Comm'r of Soc. Sec.*, 845 F. Supp. 2d 1262, 1272-73 (M.D. Fla. 2012) (citing *Venette v. Apfel,* 14 F.Supp.2d 1307, 1314 (S.D. Fla. 1998) (a claimant's testimony that she can do some housework, light cooking, and light grocery shopping are minimal daily activities and do not constitute good cause to reject a medical opinion).  In sum, considering the law of the case, the ALJ erred in finding that Dr. Rullan's opinion was not supported by his treatment notes and Plaintiff's activities of daily living.

### 2. Supplemental Reasons

A further review of the ALJ's decisions shows that in rejecting Dr. Rullan's opinion, the ALJ also provided reasons not previously addressed by the 2014 Order.  Specifically, the ALJ stated that Plaintiff's medication provided relief from her pain (Tr. 597), and that Dr. Rullan's opinion that Plaintiff "needed to rest five hours of an eight-hour day," was not supported by the medical evidence of record.  Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (per curiam) (citation omitted).  Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).  In fact, the ALJ may reject any opinion when the evidence supports a contrary conclusion.  *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam).

Plaintiff argues that contrary to the ALJ's findings that "the medical evidence during 2002 contained numerous reports of improvement, both self-reported by the claimant and from treating examiners" (Tr. 1285), the medical evidence shows that Plaintiff's medication was neither "generally successful in controlling her symptoms," nor indicative of non-aggressive therapy. A review of the record shows that between 2002 and 2004, Plaintiff was prescribed the following medications: Celebrex, Lortab, Prednisone, methotrexate, Flexeril, Bexon, Ultracet, Enbrel, Humira injections, and OxiCotyn (Tr. 610, 613-14, 341, 605-06, 602-03, 592-93, 1342). While the medications at times helped to alleviate Plaintiff's symptoms, the record shows that through the years, Plaintiff's medication dosages increased rather than decreased (Tr. 586, 593, 351, 349, 593). At the same time, different physicians noted that while able to control Plaintiff's symptoms at times, the medication did not provide total relief from Plaintiff's chronic pain (Tr. 358, 602-14). Indeed, a "second line agent" (i.e., disease modifying treatment) was considered by Dr. Brown as a form of treatment (Tr. 357–59). Furthermore, and stated by Plaintiff, Plaintiff received narcotic (OxyContin) medication for pain and underwent injections of immunomodulators (Enbrel and Humira) at maximum dosages, which, as stated by Plaintiff, is not a conservative treatment (Tr. 602-03,605-06, 593, 586).

With regards to Dr. Rullan's opinion regarding Plaintiff's need to rest for five hours daily, the ALJ found that this was inconsistent with the evidence because Plaintiff reported, for example, that on October 2000 she was going to massage therapy school. According to Plaintiff's testimony, Plaintiff was involved in massage therapy from 1996 to 2000 (Tr. 1350). The ALJ failed to note Plaintiff's testimony that because of the physical demands of the job, she was unable to continue working. Further, Plaintiff testified that during the four years she worked as a massage therapist, she was unable to see, on average, more than five patients a week due to fatigue and pain (Tr. 1352–53). Additionally, Plaintiff testified that she was unable

to engage in marketing for her massage therapy business because she could never get out of bed (Tr. 1353). A complete review of the evidence; therefore, shows that in October of 2000, Plaintiff was not going to massage therapy school, as stated by the ALJ, on the contrary, Plaintiff stopped working as a massage therapist due to the physical demands of the job. Here, therefore, the opinion of Dr. Rullan is not inconsistent with the record.

In conclusion, although the ALJ articulated other reasons for which the opinion of Dr. Rullan was entitled to little weight, the undersigned finds that these reasons were either previously addressed by the Court's 2014 Order remanding the case for further consideration, or are in light of the record, not good cause to reject the opinion of Plaintiff's treating physician. Thus, the ALJ erred in this regard.

### B. Plaintiff's Credibility Determination[5]

Plaintiff argues that the ALJ erred in finding Plaintiff's alleged pain and limitations not entirely credible and that the ALJ's findings were not supported by substantial evidence. In social security disability cases, credibility determinations fall within the province of the ALJ. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (per curiam). To establish a disability based on testimony of pain and other symptoms, the claimant must show evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptoms or (2) that the objectively determined medical condition can reasonably be expected to give rise to the alleged symptoms. *Wilson*, 284 F.3d at 1225 (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see* 20 C.F.R. §§ 404.1529, 416.929.

---

[5] As result of Plaintiff's application for disability benefits, and as a result of the various remands for consideration of the ALJ's findings, Plaintiff has appeared with the assistance of counsel at five different hearings, including a February 16, 2006 hearing (Tr. 1399-1425), a November 17, 2007 hearing (Tr. 1471-1508), a July 14, 2009 hearing (Tr. 1426-70), a February 12, 2012 hearing (Tr. 1226-61) and finally at the January 13, 2015 hearing, which provides the relevant allegations in this instance (Tr. 1326-77).

"If the objective medical evidence does not confirm the alleged severity of a claimant's symptom, but an impairment can be reasonably expected to cause that alleged severity, an ALJ must evaluate the intensity and persistence of her alleged symptoms and their effect on her ability to work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).   In doing so, an ALJ must consider all available evidence including: (1) the claimant's daily activities; (2) the 'duration, frequency, and intensity' of the claimant's symptoms; (3) '[p]recipitating and aggravating factors'; (4) the effectiveness and side effects of any medications; and (5) treatment or other measures taken by the claimant to alleviate symptoms." *Davis v. Comm'r of Soc. Sec.*, 449 F. App'x. 828, 834 (11th Cir. 2011) (citing 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3)).   "The ALJ is to consider these factors in light of the other evidence in the record." *Id.*  Finally, when the ALJ discredits the claimant's subjective testimony, the ALJ must articulate explicit and adequate reasons for doing so.  *Wilson*, 284 F.3d at 1225; *Foote v. Chater,* 67 F.3d 1553, 1561–62 (11th Cir. 1995) (per curiam).

Plaintiff testified that she stopped working mainly due to fatigue, pain in her neck and shoulders, and pain in her arms and hands (Tr. 1334).  According to Plaintiff, these pains were associated with her rheumatoid arthritis, fibromyalgia, and lumbar bulges and herniations (*See* Tr. 1331–32).   In her decision, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, the statements of record, including all third-party witness statements [and] testimony, concerning the intensity, persistence and limited effects of [her] symptoms [were] not entirely credible" (Tr. 1281).  In reaching his credibility determination, the ALJ first considered Plaintiff's activities of daily living and found them inconsistent with Plaintiff's subjective complaints in the following terms:

> the claimant's ability to care for young children at home, even with assistance, which can be quite demanding physically, tends to suggest that the alleged

> symptoms and limitations may have been overstated. Additional, the claimant's willingness to perform even light housekeeping, such as vacuuming, or an activity as heavy as shrub trimming, even on a rare basis as reported by the claimant, is inconsistent with her allegation that her pain was as persistent and unremitting as to preclude all work activity. Further, the claimant's ability to visit a museum, even rarely, and entertain during family holidays, is inconsistent with her allegations of pain so severe, she cannot perform any work.

(Tr. 1281).   However, a complete reading of Plaintiff's testimony shows that Plaintiff was unable to do housework due to her asthma and pain in her neck, back, and joints (Tr. 1335). She was unable to cook meals or to dress her children (Tr. 1337–38).  She also testified that during the relevant time frame, the fatigue was so bad, that she had to decide "to either walk out and get the mail that day or take a shower" because she did not have "the energy to do both" and that she did not bathe daily (Tr. 1336, 1342).  She testified that her husband did most of the grocery shopping, and when she went shopping, sometimes she would walk and sometimes she would use the electric cart (Tr. 1335–36).   The fact that a plaintiff may perform minimal activities of daily living, as is the case here, is not substantial evidence to reject Plaintiff's testimony of pain.  *See Martz v. Comm., Social Sec. Admin.*, 649 F. App'x. 948, 961–62 (11th Cir. 2016) (unpublished) (finding that substantial evidence did not support ALJ's reasoning for discrediting Social Security disability insurance claimant's subjective complaints when Plaintiff performed minimal daily activities and her husband did the heavy-duty household chores); *See also Lewis v. Callaghan,* 125 F.3d 1436, 1441 (11th Cir. 1997) (finding that participation in activities of short duration, such as housework does not disqualify a claimant from disability). Therefore, the ALJ's decision in this regard is not supported by substantial evidence.

In reaching his determination, the ALJ also considered inconsistencies in Plaintiff's reports and the record (Tr. 1281-82). Specifically, the ALJ stated:

> the claimant's testimony at the hearing that she slept nine to ten hours at night and three hours during the day, conflicts with her earlier allegations of difficulty sleeping through the night. Further, the claimant's report that she used numerous assistive devices for walking, is not supported in the medical evidence of record.

(Tr. 1281-82).   In considering a claimant's subjective complaints, the ALJ may consider whether any inconsistencies exist in the evidence and the extent to which any conflicts exist between a claimant's statements and the rest of the evidence.   20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).   A complete reading of Plaintiff's testimony shows that Plaintiff stopped working in 2002 due to substantial fatigue.   As a result of her fatigue, Plaintiff testified she was "probably sleeping nine, ten hours a night" and approximately three additional hours during the day, while the rest of the time she was "resting" if not sleeping (Tr. 1334–35, 1365–66). Plaintiff testified, however, that her symptoms varied depending on the day (Tr. 1336). Additionally, she testified that someday she slept too much, sometimes she couldn't sleep at all (Tr. 1367).   In ascertaining whether the ALJ's findings are supported by substantial evidence, the entire record must be viewed and evidence in the record which detracts from the evidence relied on by the ALJ must be evaluated as well.   *Parker v. Bowen,* 793 F.2d 1177, 1180 (11th Cir. 1986).   Here Plaintiff's testimony is not incongruent with the medical evidence on record stating that the Plaintiff had periods in which her pain and fatigue improved and periods in which Plaintiff's pain increased.   Neither is Plaintiff's general testimony incongruent with her previous testimonies, in which she reported that "fatigue" was her main problem, she had to sleep every day at least a couple of hours (Tr. 1441).   Therefore, the undersigned finds that the mentioned inconsistencies are not substantial evidence to discredit Plaintiff's testimony.

With regards to Plaintiff's testimony about the use of medical devices, the undersigned agrees with the ALJ that Plaintiff's testimony is unsubstantiated by the medical evidence of record.   Nonetheless, the undersigned finds this testimony irrelevant as Plaintiff's further stated that she discontinues the use of assistive devices or that the use of this devices was non-useful (Tr. 1339).

17

In evaluating Plaintiff's credibility, the ALJ also considered Plaintiff's claim of fibromyalgia. The Commissioner argues that Plaintiff failed to address the ALJ's statements regarding Plaintiff's fibromyalgia pain, therefore, any argument in this regard is waived (Doc. 28 at 39). The undersigned, however, finds that a review of the ALJ's credibility finding is pertinent as the Court's 2014 Order required the ALJ to evaluate Plaintiff's claim of fibromyalgia in light of Dr. Rullan's opinion. *See Sullivan v. Hudson,* 490 U.S. 877, 886 (1989) (stating that "[d]eviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review"). In other words, Plaintiff's credibility and Dr. Rullan's opinion are intertwined issues. Therefore, the undersigned will evaluate Plaintiff's arguments challenging the ALJ's reasons for discrediting Dr. Rullan's opinion to the extent that they impact the ALJ's credibility determination.

"[Fibromyalgia] is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p, 2012 WL 3104869 at *2. In evaluating the RFC of a person with Fibromyalgia, the ALJ must consider a longitudinal record because the symptoms of Fibromyalgia "can wax and wane so that a person may have 'bad days and good days.'" *Id.* at *6. Typical symptoms associated with fibromyalgia may include widespread pain and fatigue. *Id.* The "hallmark" of Fibromyalgia is "a lack of objective evidence," and the condition "often lacks medical and laboratory sings, and it is generally diagnosed mostly on an individual's describe symptoms." *Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x. 56, 63 (11th Cir. 2010). In determining whether to credit a Plaintiff's testimony of pain due to fibromyalgia "a treating physician's testimony can be particularly valuable." *Johnson v. Astrue*, No. CA 11-0460-C, 2012 WL 1565644, at *12 (S.D. Ala. May 2, 2012); *see also Moore*, 405 F.3d at 1211–12 (reversing an ALJ's decision to discount Plaintiff's credibility due to lack of objective evidence

of impairment and noting that a "treating physician's testimony can be particularly valuable in fibromyalgia cases, where objective evidence is often absent"); *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir.1996) (stating that "a treating physician's determination that a patient is disabled due to fibromyalgia is even more valuable because there are no objective signs of severity and the physician must interpret the data for the reader").

In reaching the conclusion that Plaintiff's symptoms may not have been as limiting as Plaintiff alleged, the ALJ evaluated Plaintiff's medical records for the years 2000 to 2004 (Tr. 1282–1286). The ALJ found that during the year 2000, Plaintiff received limited treatment from an acceptable medical source, which indicated that the severity of Plaintiff's fibromyalgia was overstated (Tr. 1281). Additionally, the ALJ stated that during the year 2001, Plaintiff's treatment for the fibromyalgia symptoms was extremely limited and consisted of only three appointments with Dr. Wagner. The ALJ found that Plaintiff's "infrequent treatment for her allegedly disabling symptoms, and the modest findings [from when] she did get treatment, suggest her symptoms were often either not bothering her or not to such severity as to require medical intervention" (Tr. 639-42, 1282). Regarding the years 2002 and 2003, the ALJ found that the medical evidence of record revealed routine treatment and minimal findings, which did not support the degree of pain and functional limitation that Plaintiff alleged. Specifically, the ALJ found that "the medical record [did] not show serious muscles [sic] weakness, muscle spasm, atrophy, weight loss or other signs of progressive physical deterioration, which might be expected [when an individual experience intense and continues pain]" and that "the medical evidence during 2002 contained numerous reports of improvement, both self-reported by the claimant and from treating examiners" (Tr. 1285). Therefore, the ALJ concluded that although Plaintiff's fibromyalgia may be expected to produce mild chronic pain and discomfort, the

medical record does not show repeated hospitalizations or aggressive forms of therapy that would be expected if she experienced severe, persistent and unremitting pain." (Tr. 1285).

Here, Plaintiff's allegation that she suffered from severe pain and had disabling functional limitations are not at odds with the medical evidence in the record, as stated by the ALJ.  In December 2002, Plaintiff was evaluated by Dr. Rullan for the first time (Tr. 407–08).  Dr. Rullan found that Plaintiff was suffering from different conditions including rheumatoid arthritis and fibromyalgia.  Dr. Rullan found that Plaintiff had a lot of fatigue, muscle and joint pain, and multiple tender points.  However, no treatment was started because of Plaintiff's pregnancy (Tr. 407–08).  Subsequently, it appears Plaintiff initiated active treatment with Dr. Rullan in September 2003.  Plaintiff was prescribed methotrexate, Flexeril, and Celebrex, and decreased the prednisone dosage (Tr. 613-14).  Plaintiff had some synovitis[6] of the wrists and hands (Tr. 613–14).  In October 2003 and November 2003, synovitis was also noted, and methotrexate was continued (Tr. 609–12), and it was noted that her condition was "deteriorating; Celebrex was discontinued, Bexon and Ultracet were prescribed; and Enbrel was recommended (Tr. 610).  During Plaintiff's visits to Dr. Rullan in December 2003, Plaintiff complained of significant pain, and Embrel was started (Tr. 601–06).  Additionally, OxyContin was prescribed for sustained pain control, to supplement Lortab for pain as needed (Tr. 602–03).  While in March 2004 Dr. Rullan's notes contain reports of Plaintiff being in a stable or good condition (Tr. 597–98), and of effective pain management through medication (Tr. 597–98), by May 2004, Dr. Rullan noted Celebrex was discontinued due to ineffectiveness, and Plaintiff reported no benefit from Embrel (Tr. 594).  Plaintiff was requesting other treatment

---

[6] Synovitis is inflammation of the synovial membrane (the inner lining of the cavity within the capsule surrounding the joint). While pain, joint effusions and restricted movement are the short-term concerns, chronic inflammation can be the first step to degenerative changes in the joint.  Synovitis is typical of rheumatoid arthritis. *See* D. McCarty, M.D., *Arthritis and Allied Conditions: A Textbook of Rheumatology*, 1372 (11th ed. 1989).

options, and reported increased thumb and bilateral upper extremity pain, but she had no synovitis (Tr. 594–95).  A review of Dr. Rullan's notes shows that her progress notes reported objective evidence to support Plaintiff's allegations of pain.  As discussed before, Dr. Rullan opined that Plaintiff would need to rest, lying down or reclining, five hours a day and take customary work breaks to relieve pain and fatigue (Tr. 623).  Therefore, Dr. Rullan's opinion calls into question the ALJ's determination to discredit Plaintiff's testimony of pain.  *See Perez v. Commissioner of Social Sec.*, 625 F. App'x. 408 (11th Cir. 2015) (reversing an ALJ's credibility determination, when the ALJ accorded insufficient weight to opinions of treating physicians that called into question ALJ's determination that claimant's testimony about her symptoms was exaggerated).

Additionally, and as previously stated by the Court, "Dr. Rullan's findings are supported by several of Plaintiff's treating and examining physicians who also recognized Dr. Rullan's diagnosis of fibromyalgia and rheumatoid arthritis and noted Plaintiff's consistent complaints of disabling pain and fatigue (Tr. 1321 (citing Tr. 326–27, 350, 370–71, 405, 415, 567)).  A review of other examining and treating physicians' notes show Plaintiff complained in multiple occasions of swelling and pain and her physicians noted such symptoms (Tr. 325–27; 335–36, 341, 349, 351, 356, 358).  While the Court will not disturb a clearly articulated credibility finding that has substantial supporting evidence in the record, *Foote*, 67 F.3d at 1562, the undersigned finds that here the ALJ applied the wrong legal standard when he considered the Plaintiff's subjective complaints of pain insofar as these were supported by objective medical findings.

### 3.   ALJ's step five finding is based on substantial evidence.

Plaintiff argues that the ALJ's step five finding is legally flawed and does not provide substantial evidence in support of the disability determination.  At step five, the Commissioner

must consider the assessment of the RFC combined with the claimant's age, education, and work experience to determine whether the claimant can make an adjustment to other work. *Phillips*, 357 F.3d at 1239; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can make an adjustment to other work, a finding of not disabled is warranted.  *Phillips*, 357 F.3d at 1239.  Conversely, if the claimant cannot make an adjustment to other work, a finding of disabled is warranted.  *Id.*  At this step, the burden temporarily shifts to the Commissioner to show other jobs exist in significant numbers in the national economy which, given the claimant's impairments, the claimant can perform.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (citation omitted); *see Foote*, 67 F.3d at 1559.  "The ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture."  *Wilson*, 284 F.3d at 1227 (citation omitted).  There are two avenues by which an ALJ may determine a claimant's ability to adjust to other work in the national economy; namely, by applying the grids and by the use of a VE.  *Phillips*, 357 F.3d at 1239-40.  Typically, where the claimant cannot perform a full range of work at a given level of exertion or where the claimant has non-exertional impairments that significantly limit basic work skills, the preferred method of demonstrating the claimant can perform other jobs is through the testimony of a VE.  *Jones*, 190 F.3d at 1229.

In reaching her disability determination, the ALJ concluded that based on the testimony of the vocational expert and given the Plaintiff's RFC, Plaintiff would be able to perform work as a "will sorter" and a "telephone solicitor," both considered semi-skill jobs.  Additionally, the VE stated that Plaintiff could perform work as an "order clerk," which is considered sedentary, unskilled work (Tr. 1291).  The ALJ further found that "transferability of job skills [was] not material to the determination of disability because using the Medical-Vocational Rules as a framework support[ed] a finding that the claimant [was] "not disabled," whether or not the

claimant ha[d] transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2)." (Tr. 1290). Plaintiff argues that the ALJ determined that Plaintiff was able to perform two semi-skilled jobs without any analysis of transferability of skills (Tr. 1290-91), and that with regards to the unskilled job listed by the VE, the ALJ did not have the opportunity to consider whether there was a significant number of jobs in the national economy (Doc 28 at 46).  The undersigned finds no error here.

The Social Security regulations provide that a claimant has transferable job skills when the skilled or semi-skilled work activities that she performed in the past can be used to meet the requirements of other jobs. 20 C.F.R. § 404.1568(d)(1).  If "the issue of transferability does not affect the determination of whether the claimant is disabled, the ALJ need only state that transferability of job skills is not material." *Garred v. Astrue*, 383 F. App'x. 820, 824 (11th Cir. 2010) (citing Soc. Sec. Admin. Programs Ops. Manual Sys. (POMS), § DI 25015.015(B)(3)(c)). When a claimant is unable to perform a full range of work at an exertional level, the ALJ may use the grids as a framework, but should also consult with a VE to determine how the claimant's impairments affect her ability to perform other jobs that exist in the national economy. *Garred*, 383 F. App'x. at 824.  Here, after concluding that Plaintiff could perform sedentary work with sit/stand limitations, the ALJ used Grid Rule 202.21 and 202.28 as a general framework. Under these rules an individual between the ages of 45 and 49 with a high school diploma or more, who has performed skilled work is generally considered no disabled even if she lacks transferable job skills.  *See* 20 C.F.R. pt. 404, subpt P, app. 2, § 202.21.  Similarly, an individual under the ages of 18 and 49 with a high school diploma or more, who has performed skilled or semi-skill work, is generally considered no disabled even if she lacks transferable job skills. *See* 20 C.F.R. pt. 404, subpt P, app. 2, § 202.28.

Here, the ALJ obtained testimony from a VE, as to whether Plaintiff could perform other jobs. The VE testified that based on Plaintiff's work history, as well as Plaintiff's age, education, and RFC, Plaintiff could perform the jobs of a will sorter, an order clerk, and a telephone solicitor (Tr. 1291). Given the framework of the grids and the VE's testimony, the ALJ properly concluded that the transferability of skills was not material to the determination of disability in this case. *See Arrington v. Soc. Sec. Admin.*, 358 F. App'x. 89, 95 (11th Cir. 2009) (claimant could not show that he was disabled due to the lack of a finding as to the transferability of job skills where ALJ properly consulted VE and found transferability of skills was not material).

Additionally, the undersigned finds that the VE's testimony is clear as to the availability of the proposed jobs in the local and national market. Specifically, the VE stated that an unskilled sedentary job that qualifies for a sit/stand at will could include the job of "order clerk" and that "there's approximately 2,600 of those positions in the greater Tampa Bay region and over 670,000 in the national economy" (Tr. 1371).  Based on the VE's testimony, the undersigned finds that the ALJ had the opportunity to consider whether the number of jobs in the single occupation of order clerk constituted a significant number of jobs and finds no error in this regard.

### 4.  Remand and Award of Benefits.

With regards to the appropriate remedy in this case, the undersigned recommends that the ALJ's decision be reversed and disability benefits be awarded.  Courts reviewing a decision of the Commissioner related to the award of disability benefits "have the power to enter . . . a judgment . . . reversing the decision of the [Commisioner], with or without remanding the case for a rehearing." 42 U.S.C.A. § 405(g).  In the Eleventh Circuit "a court may reserve an ALJ's decision and remand the case for an entry of an order awarding disability benefits where the

[Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993) (emphasis added). Additionally, a court may award benefits when the record is fully developed, there is no need to remand for additional evidence, and upon application of the proper legal standard a claimant is found disabled. *See Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991). The undersigned recognized that, in general, when the ALJ fails to apply the appropriate legal standard, the preferred remedy is to remand a case for further proceedings, *see e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) (reversing and remanding an ALJ's decision for further consideration, when the ALJ wrongfully applied the legal standard when considering appellant's subjective complaints of pain). Here, however, based on the fully developed record, the strength of the evidence, and the case's long procedural history, the undersigned finds that "the cumulative effect of the evidence establishes disability without any doubt." *Davis*, 985 F.2d at 534.

Notably, Plaintiff seeks benefits for a closed period, and the court is in possession of all the relevant evidence, therefore the record has been fully developed in this case. Second, the ALJ has failed to provide a good reason to give little weight to the opinion of Plaintiff's treating physician, Dr. Rullan, and to discredit Plaintiff's credibility. These errors are not harmless. The VE testified in this case that a person limited to sit for only two hours and to stand and walk for one hour during the workday, and who needs to rest for five hours during the workday, would be precluded from performing any full-time job (Tr. 1372–73). More importantly, the VE testified that if the ALJ were to find Plaintiff's testimony of fatigue, lack of concentration and rest needed credible, Plaintiff would be unable to perform any sustained, full-time work, during the relevant period, and therefore would be unable to perform sedentary work as defined in 20 CFR 404.1567(a). Consequently, in light of the 2014 Order stating the law of the case in

this instance, and the specific findings made by the undersigned, it is recommended that Plaintiff be awarded benefits.

## IV.

Accordingly, for the foregoing reasons, it is hereby

RECOMMENDED:

1. The decision of the Commissioner be reverse and remand for an award of benefits.

2. The Clerk be directed to enter final judgment in favor of Plaintiff and close the case.

IT IS SO REPORTED in Tampa, Florida, on this 12th day of August, 2018.


ANTHONY E. PORCELLI
United States Magistrate Judge

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.


cc:     Hon. James S. Moody, Jr.
        Counsel of Record